IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RANDOLPH JONES,                     }
       *Plaintiff*              }
                                    }
v.                                  }     CIVIL ACTION NO. H-04-2246
                                    }
CONTINENTAL AIRLINES, INC ,         }
       *Defendant(s)*          }

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Pending before the court in this Family and Medical Leave Act ("FMLA") case is Defendant's motion for summary judgment (Doc. 15).  For the reasons set forth below, the court **ORDERS** that Defendant's motion is **GRANTED**.

### II.    FACTUAL BACKGROUND

Plaintiff Randolph Jones ("Jones") was fired from his position in the Reservations Division of Continental.  He had been with the company for eighteen years.  The putative reason for his termination was his dishonesty during a series of interviews conducted by his supervisor and members of the human resources department.

Two days prior to his dismissal, Jones was re-certified for medical leave under company policy and the FMLA because of chronic allergies and asthmatic symptoms.  Jones was first approved for FMLA leave in 1996, and he continued to re-certify throughout his career.  The latest approval was to be effective for one year, beginning on February 19, 2004.  It allowed him intermittent leave of one to two days per week up to seven days per month.

According to Mae Saunders, Jones's supervisor, the investigation that led to Jones's dismissal was launched based on a report from a co-worker that Jones was using his sick time to leave early and car pool with a fellow employee.  Acting on this tip, Saunders investigated and found that on 19 occasions Jones left work early on the same day as fellow employee Kier Porter ("Porter").  On some of these occasions the personnel records reveal that Jones and Porter left at

nearly the same time. On other dates there is a significant lapse of time between their departures. No witnesses confirmed that the two left together. Jones and Porter deny that they left together on all the occasions in question. Also, Jones stresses that he never left early except when he was sick. Nevertheless, Saunders and other members of management decided the matter deserved further investigation.

During February, the management team conducted interviews with Jones and Porter to uncover the truth about the styled "carpool-with-sick-leave scam." After speaking with both several times, a consensus was reached that Jones and Porter were misleading their interviewers and obfuscating the truth[1]. Without warning to Jones and Porter, the decision was made that both

---

[1] The following memo, written by the supervisor of the OnePass Service Center where Jones worked, is indicative of management's thoughts.

"Meetings held with Randy Jones and co worker, as well as the written statements, have not clarified why there is a pattern of them both getting sick and having to leave work together. Randy's responses to questions are inconsistent and differ from co worker's. His co worker's responses, in most cases, are very vague. Since Randy's initial response was that they leave together because they ride together, I believe both should be terminated.

Some of the following information is very vague and alone may seem insignificant. However, it shows a pattern of constantly changing answers to questions, inconsistencies between the two employees and vague answers to important questions.

When asked ... You are well enough to come in, so what changes after you arrive to cause you to tell co worker to let you know if she is leaving? Randy first said co worker lets him know in passing. He later said she knows he is sick because he tells her as soon as he gets into the car. When co worker was asked if Randy lets her know when he is not feeling well and to let him know if she is leaving, she first said, "No, he never asked nothing like that". Then she said she was confused by the wording and agreed that he may have made the statement. She was not sure when she found out he was not feeling well. When asked if he told her on the ride to work, she said he did not. When questioned more, She said he may have told her, but she is so concerned about her own illness that she may not remember.

Coworker initially said she does not remember how often they ride together. Later she said they ride together about twice a week. Randy previously said they ride together 4 times a week. In 3/5 meeting he says they ride together twice a month.

When asked about the 2/10 and 2/4 absences, he said he and coworker did not ride together that he has his own automobile and therefore does not need to leave work for a ride.

In two previous meetings, one with Mae and one with me, Randy never mentioned having rides with anyone else. When asked about the pattern of him leaving when coworker leaves he initially said he leaves for a ride. In my meeting he said he arrives at work sick everyday therefore he does not leave for a ride. He leaves because he is sick.

Randy says his problem started when we relocated to NHC. He says the grass and trees cause him problems with allergies. Later he said he had same problem at RCH.

Randy gave a vague answer to . . . If transportation is not a problem then why do you have to coordinate when you leave? He talked about having relatives nearby who could pick him up, but never explained why he had to coordinate with coworker.

Randy says he has given coworker his keys to drive his car to her home when he is feeling ill and a relative picks him up. Coworker initially said this had not happened. Later she did not understand the question. When clarified, she had difficulty remembering, but said it may have happened.

In previous conversations Randy said he does not drive because of all the freeways and was concerned about how he would get to work at NHC. He said he would have to carpool to work. He now says he drives the feeder. He has no reason to coordinate his rides with anybody when he is sick because he has his own car. When asked what he would do if he had not driven his car to work, he says he would call a relative. Again, much time has been spent trying to get answers to questions that will allow us to give the employees the benefit of the doubt. Instead, more doubt has been creative and as stated previously, I think both should be terminated." Memorandum from Jeanette Coniglio (Doc. 15, Ex. J).

should be fired[2].

Jones claims that Continental's articulated reason for firing him is pretext or was coupled with the improper motive of punishing him for taking FMLA leave.

## III.   APPLICABLE LAW

### A.  Summary Judgment

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims.  *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987).  The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial.  Fed. R. Civ. P. 56(c).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts.  *Anderson*, 477 U.S. at 256-57.  He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party."  *Id.* at 254.  A mere scintilla of evidence will not preclude granting of a motion for summary judgment.  *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United*

---

[2] Continental's employee handbook states that "any dishonesty associated with an absence can result in *immediate* termination."  Continental Employee Handbook, Section 18 (E)(2)(c) (Doc. 15, Ex. K) (emphasis added).

*States v. Diebold*, 369 U.S. 654, 655 (1962).  Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586.  Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor.  *Anderson*, 477 U.S. at 249.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.*, 477 U.S. at 249-50.  Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence.  *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

### B. Discrimination Claims Under 29 U.S.C. § 2615(a)(2)

Traditionally, when there is no direct evidence that an adverse employment decision was motivated by retaliatory animus, courts apply the *McDonnell-Douglas v. Green*, 411 U.S. 792 (1973), three-part burden shifting test to claims brought under the FMLA. *See Chaffin v. John H. Carter Co. Inc.*, 179 F.3d 316, 319 (5th Cir. 1999) (adopting *McDonnell-Douglas* for FMLA

claims). Under the *McDonnell-Douglas* framework, plaintiff must first produce sufficient evidence to plead a *prima facie* case. A *prima facie* case of retaliatory discharge under the FMLA consists of three elements: (1) protected status under the FMLA; (2) an adverse employment action by the employer; and (3) a causal relationship between plaintiff's protected activity and the adverse employment decision. *Id.* If the plaintiff successfully pleads a *prima facie* case, the burden of production shifts to the defendant to produce some evidence of a legitimate, non-discriminatory, reason for the adverse employment decision. *Id.* If the defendant is successful, then "[T]o defeat summary judgment, a plaintiff must produce substantial probative evidence that the proffered reason is not the true reason for an employment decision and that the real reason is the plaintiff's participation in a protected activity." *Id.* at 320.

Jones argues in his opposition papers that given the Supreme Court's decision in *Desert Palace Inc., v. Costa*, 539 U.S. 90 (2003), he should not have to show that Continental's articulated legitimate reason is false and that the real reason was retaliation. Rather, he argues that his burden should only be to introduce evidence sufficient to support a jury's finding that retaliation was a motivating factor in the adverse employment decision.

Whether the *Costa* framework applies to FMLA cases is still an open question in this circuit. *Costa*, a Title VII discrimination case, held that a plaintiff does not need to present direct evidence of discrimination to obtain a mixed-motive instruction. *Id.* at 92. In other words, in order to survive summary judgment the plaintiff need not show that the employer's articulated legitimate reason was false. Instead, the plaintiff need only show that the illegitimate reason was a motivating factor in the adverse employment decision. *Id.*

*Costa* has been applied outside the context of Title VII litigation. In *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004), the Fifth Circuit adopted *Costa* for Age Discrimination in Employment Act (ADEA) claims. The Court did so because of the similarity of purpose and design of the two acts. *Rachid*, 376 F.3d at 311. As of this writing, the Fifth Circuit has not adopted or rejected the *Costa* framework for FMLA claims.

Regardless of which framework is applied – strict *McDonnell-Douglas* or *Costa* – Jones

has not introduced sufficient evidence to submit to a jury the question of whether Continental was motivated, exclusively or partially, by a desire to retaliate against him for using FMLA leave.

## IV.  APPLICATION OF LAW TO THE FACTS

The parties do not dispute that Jones engaged in a protected activity and suffered an adverse employment decision. Rather, they differ on whether Jones has shown a sufficient nexus between the two events to establish a prima facie case. If he has, Continental insists that he has not met his burden of rebutting their articulated legitimate reason for firing him.

Jones urges the court to infer causation because Mae Saunders, his supervisor, knew he had been granted FMLA leave when she recommended that he be terminated. Where, as here, plaintiff has been on FMLA leave for a significant amount of time, his superior's knowledge of that fact does not raise the specter of retaliation. *Dodgens v. Kent Mfg. Co.*, 955 F. Supp. 560, 566 (D. S.C. 1997). The pleadings reveal that Continental first approved Jones for FMLA leave in 1996; it stretches the imagination to believe that they waited until 2004 to retaliate against him for it.

Alternatively, Jones points to what he sees as Continental's failure to follow procedure as a basis for finding causation. This allegation is not, however, supported by the record. Continental's employee handbook provides that "any dishonesty associated with an absence can result in immediate termination." Continental Employee Handbook Section 18 (E)(2)(c) (Doc. 15 Ex. K). The letter Jones received informing him of his termination contained this passage and stated that he was being terminated for dishonesty.

Jones, even if he states a prima facie claim for retaliatory discharge, cannot overcome the *Costa* or *McDonnell-Douglas* burden shifting frameworks. Continental has articulated a legitimate reason for terminating Jones's employment – his perceived dishonesty. Under *McDonnell-Douglas*, Jones must now introduce sufficient evidence for a jury to find that this legitimate basis is false and that retaliation was the real motive. To do so, Jones insists in his affidavit that he was never dishonest. This, however, is not enough. Rather, it is Continental's good faith belief in his dishonesty that he must disprove. Jones has not introduced any evidence, even circumstantially

in the form of his doctor's records or third party affidavits, on this point. Therefore, summary judgment is proper.

Under *Costa*, Jones need not establish that Continental's articulated belief in his dishonesty is false. Instead, he must show that retaliation was a motivating factor in the adverse employment decision. On this point, Jones relies on the two arguments he made for causation: (1) that his supervisor knew he was certified for FMLA leave, and (2) that Continental failed to follow company procedures when it dismissed him. As discussed *supra*, his supervisor's knowledge is not dispositive because Jones had been certified for FMLA leave during the preceding eight years. Moreover, Continental did follow company procedures regarding untruthfulness. Therefore, even under *Costa*, summary judgment is proper.

While it may be unfair that, without being given a second chance, Mr. Jones was terminated after eighteen years of good service, it is not for the court to determine what is fair in an arms length employment relationship.[3] Instead, the court must base its decision on the evidence presented. Here, Jones has presented no evidence that Continental fired him in retaliation for taking FMLA leave.

## V.   CONCLUSION & ORDER

For the foregoing reasons, the court **ORDERS** that Defendant Continental Airlines's motion for summary judgment (Doc. 15) is **GRANTED**.

**SIGNED** at Houston, Texas, this 14th day of September, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[3] Here, it appears Jones's appealed his termination to a committee composed of co-workers, who upheld the decision.